UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| ALLEN CASSIDY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:05-cv-350 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| JOHN RUBITSCHUN et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has been directed to pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.    Factual Allegations

Plaintiff Allen Cassidy presently is incarcerated with the Michigan Department of Corrections and housed at the Straits Correctional Facility, though the actions of which he complains occurred while he was housed at the Florence Crane Correctional Facility (ACF). Petitioner sues the Chairman of the Michigan Parole Board, John Rubitschun, parole board member Miguel Berrios, ACF law librarian M. Gray, and ACF assistant deputy warden L. Beckwith.

Plaintiff currently is serving three terms of three to fifteen years, imposed on September 3, 1992, after Plaintiff was found guilty in a bench trial of extortion, breaking and entering with intent, and unarmed robbery. According to the allegations contained in the complaint, on February 20, 1998, Plaintiff was released to serve a 24-month term of parole. On June 25, 1998, Plaintiff violated his conditions of parole by failing to report, and an absconder's warrant was issued. Plaintiff was arrested on August 15, 1998 for the parole violation. On August 17, 1998, Plaintiff was arraigned on a charge of unarmed robbery, and he was bound over to the Wayne County Circuit Court on the charge on August 27, 1998. He pleaded guilty to the charge on January 5, 2000, and he was sentenced to a five-year term of probation, with the first year to be served in the Wayne County Jail. Thereafter, on November 28, 2000, Plaintiff was found guilty of violating his parole by two technical rule violations. On February 15, 2001, Plaintiff was notified that, as a result of the guilty finding, consideration for parole was continued for 24 months.

On March 14, 2002, Plaintiff received a parole guideline score of +6, indicating a high probability of parole. Plaintiff complained at the hearing that two guidelines had been mis-scored due to errors in the record, i.e., that the offense had "resulted in injury" and a programing

variable of "C." The errors allegedly deprived Plaintiff of two additional positive points. Parole board member George Lellis allegedly made the changes to the inaccurate information. Notwithstanding the high score, the parole board denied Plaintiff's parole on April 1, 2002, for the following reason: "Prisoner engaged in robbery conduct on Parole: Criminal behavior that mimics his underlying offense. This repetitive behavior constitutes his second parole failure and is an indicator of continued risk despite the High Parole Guideline Score. Departure Warranted." Plaintiff asserts that the reason for departing from the guidelines recommendation of parole was insufficient under Michigan rules, and the parole decision continued to contain the inaccurate information. Plaintiff sought reconsideration, asserting that the decision was based on false information. Reconsideration was denied, though the scoring questions were referred to Plaintiff's unit for response. Both of Plaintiff's scoring challenges later resulted in a change to the guideline scoring. Plaintiff again sought reconsideration, which again was denied on January 24, 2003.

On March 24, 2005, Plaintiff filed a grievance (No. KTF-05-03-345-28e), naming Defendant Rubitschun and asserting a violation of due process. The grievance was denied and Plaintiff pursued his grievance to both Step II and Step III. The Step III grievance, filed April 22, 2005, was not yet answered at the time Plaintiff filed the instant action.

On March 11, 2004, Plaintiff was interviewed by Defendant Berrios for parole consideration, and he received a parole guideline score of +11, indicating a high probability of parole. Plaintiff was notified on April 1, 2004 that he was receiving another 12-month continuance on parole consideration. He asserts that the April 1, 2004 notice again includes the inaccurate information that the offense "resulted in injury." The reason given for denying parole was that "[d]uring Prisoner's Parole Board Interview, he was unable to demonstrate sufficient insight into his

repeated acts of violence, additional insight into this negative behavior will help reduce his High unacceptable risk to the public." The parole board therefore "was unable to conclude that the inmate would not be a risk if Paroled."

Plaintiff grieved the parole denial on April 20, 2004 (No. ACF-04-04-269-16z). The grievance was denied and Plaintiff appealed through Step III, which was denied on September 9, 2004. Plaintiff also sought reconsideration of his parole denial. He received a response on June 18, 2004, including an amended parole board recommendation, which eliminated mistaken information but reached the same decision and continued parole review for another 12 months.

On April 12, 2004, Plaintiff sought and received transfer to the Florence Crane Correctional Facility to begin research on other avenues to pursue his parole denial complaints. Plaintiff alleges that on October 25, 2004, he received his requested copies of the "Michigan Parole Appeals Handbook 2004." Some pages, however, were spoiled in the copying, and Plaintiff asked Defendant Gray to destroy them in his presence. Instead, Gray ordered Plaintiff to give her both the newly made copies and the original book because they constituted restricted legal contraband. Plaintiff grieved the confiscation on October 26, 2004 (No. ACF-04-10-711-14a). The Step I response acknowledged that the librarian was in error about the paperwork being on the restricted publication list. Plaintiff was given his copies and the waste copy was destroyed, but the librarian denied ever possessing the book. Plaintiff grieved to both Step II and Step III. The responses found no error in the resolution at Step I.

Plaintiff first alleges that Defendants Rubtischun and Berrios, both in relying on false information and in departing from the parole guideline scoring recommendation, violated his right to due process under the Fourteenth Amendment. Second, he alleges that their conduct violated the

Privacy Act, 5 U.S.C. § 552a, because they intentionally and willfully failed to correct his parole record and used that false record to deny him parole.  Third, Plaintiff alleges that Rubtischun and Berrios conspired in their actions so as to violate the Fourteenth Amendment.  Fourth, Plaintiff complains that Defendants Berrios and Rubitschun were negligent, ostensibly in violation of federal and state law.  Fifth, Plaintiff asserts that both Defendant Gray and Defendant Beckwith deprived him of his legal materials without due process.  Sixth, Plaintiff alleges that Defendants Gray and Beckwith deprived him of his materials in retaliation for his exercise of his rights to petition the courts.  Seventh, Plaintiff alleges that Gray's and Beckwith's actions amounted to the intentional infliction of emotional distress in violation of Michigan law.

For relief, Plaintiff seeks the removal of false information from his file and a new parole interview based on correct information and in compliance with applicable Michigan law.  He also seeks both compensatory and punitive damages.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Parole Denial

In Counts I and III, Plaintiff alleges that his parole denials were based on false information and were reached in violation of Michigan parole procedures. He contends that Defendants Rubitschun and Berrios both denied his right to due process and conspired to do so.

Plaintiff suggests that, because he does not seek the immediate grant of parole, he is not challenging the duration of his sentence, but instead is challenging the procedures used by the Defendants in determining parole. He therefore appears to argue that his claim properly is brought in a § 1983 proceeding rather than in a habeas challenge to the length of his sentence.

Plaintiff's argument appears to rest on Supreme Court's recent decision in *Wilkinson v. Dotson*, 125 S. Ct. 1242 (2005), in which the Court held that prisoners could challenge the constitutionality of state parole procedures in action under § 1983 seeking declaratory and injunctive relief, and were not required to instead seek relief exclusively under the federal habeas corpus statutes. Plaintiff suggests that, because he challenges the procedures used in his parole, not the ultimate determination, his claim is not barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]."), and *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (where a prisoner's claim of unfair procedures in a hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983). However, as the Supreme Court reiterated in *Wilkinson*, the cases of *Heck* and *Edwards*, "taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief),

no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 125 S. Ct. at 1248. Although Plaintiff does not seek an order granting parole, certain portions of his complaint are barred by *Heck* and are noncognizable in this § 1983 proceeding. For example, Plaintiff is not entitled to damages caused by his continued incarceration, since such a claim necessarily implies the invalidity of the parole decision.

Assuming some portion of Plaintiff's claim regarding his parole denial is cognizable in this proceeding, Plaintiff is not entitled to relief because fails to raise a claim of constitutional magnitude. Plaintiff has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system does not by itself give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7; *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's Parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581 (6th Cir. March 24, 2004); *Martin v. Ohio Adult Parole*

*Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Michigan Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. April 10, 1990). Indeed, in *Carnes v. Engler*, No. 03-1212, 2003 WL 22177118, at *1 (6th Cir. Sept. 19, 2003), the Sixth Circuit expressly rejected the argument made by Plaintiff in the instant case, that the Michigan parole scheme created a liberty interest in parole because it places severe restrictions on the board's discretion to grant or deny parole and requires the board to provide "substantial and compelling reasons" for departing from the parole guidelines. Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Michigan Parole Bd.* 596 N.W.2d 598, 603-04 (Mich. 1999). Plaintiff therefore has no liberty interest at stake.

Similarly, Plaintiff's allegation that false information was included in his parole file also fails to state a claim. Assuming that the parole board did rely on false information, Plaintiff's

claim does not present any constitutional violation. *See Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. April 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation). Because Plaintiff has no liberty interest in being paroled, Plaintiff cannot show that the false information was relied upon to a constitutionally-significant degree. *See Maiden v. Johnson*, No. 98-1479, 1999 WL 507207, at *1 (6th Cir. June 10, 1999); *Draughn v. Green*, NO. 97-1263, 1999 WL 164915, at *2 (6th Cir. March 12, 1999); *Perotti v. Marshall*, No. 85-3776, 1986 WL 16695 (6th Cir. March 14, 1986). Therefore, Plaintiff fails to state a claim for a violation of his due process rights.

**B.     Privacy Act, 5 U.S.C. § 552a**

Plaintiff contends that Defendant Rubitschun's and Berrios' deliberate or negligent failures to correct his parole records violated his rights under the 5 U.S.C. § 552a. Among other things, the referenced statutory provision permits an individual citizen to access federal agency records containing personal information about him and to make corrections to those records. *See* 5 U.S.C. § 552a(d). The statute also provides a civil remedy for agency failures to comply with the requirements of the act. 5 U.S.C. § 552a(g). The statute defines the term "agency" as the word is defined in 5 U.S.C. § 552(e). *See* 5 U.S.C. § 552a(a)(1). Section 552(e) and (f) clearly indicate that agencies covered by the act are exclusively federal regulatory agencies, executive departments and governmental corporations. The Michigan Parole Board and the Michigan Department of Corrections are simply not within the compass of the act. Plaintiff's allegations, therefore, fail to state a federal claim.

### C. Conspiracy

Plaintiff vaguely alleges that Defendants Berrios and Rubitschun conspired to deprive him of his right to due process under the Fourteenth Amendment. As the Court previously has held, Plaintiff failed to state a federal due process claim regarding the actions taken by Berrios, Rubitschun and the Michigan Parole Board because Plaintiff had no liberty interest in parole and therefore was not entitled to procedural due process respecting his parole. Because Plaintiff has no due process liberty interest in parole, Defendants cannot have violated the constitution by conspiring to deprive him of such interest. *See Stanley v. City of Norton*, No. 03-3724, 2005 WL 65522, at *4 (6th Cir. Jan. 6, 2005).

### D. Deprivation of Legal Materials

In counts five and six of his complaint, Plaintiff contends that Defendants Gray and Beckwith deprived him of his legal materials without due process and in retaliation for his exercise of his right to petition the courts. Neither count states a claim for relief.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part* by *Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of state officials, he must plead and prove the inadequacy of state post-

deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-480 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112 ¶ II(B) (effective Sept. 24, 1998). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112 ¶ II(B). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a); *see Green v. State Corrections Dep't*, 192 N.W.2d 491 (Mich. 1971) (state liable for tortuous injury sustained by a sentenced convict at the Detroit House of Correction). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Count V of Plaintiff's complaint will be dismissed.

Plaintiff also fails to state a claim of retaliation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 *1037 (6th Cir.1999) (*en banc*). In order to set forth a First Amendment retaliation

claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. April 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. March 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff's allegations are wholly conclusory in this action. Plaintiff merely alleges the ultimate fact of retaliation. He has alleged no facts to support his conclusion that Gray improperly confiscated or that Beckwith permitted the confiscation of certain legal materials because Plaintiff was exercising his right to challenge his parole determination. Accordingly, Plaintiff's speculative allegations fail to state a claim of retaliation.

### E. State Law Claims

In counts four and seven of his complaint, Plaintiff alleges violations of state law. In Count IV, he asserts that Defendants Rubtischun and Berrios were negligent in handling his parole records, in violation of the Fourteenth Amendment and state law. In Count VII, he complains that the actions of Defendants Gray and Beckwith, in depriving him of his legal materials, committed the tort of intentional infliction of emotional distress.

To the extent Plaintiff reasserts a federal due process claim under the Fourteenth Amendment, the Court previously has rejected the claim. Moreover, assuming Plaintiff had a liberty interest in parole, he would fail to state a procedural due process claim based on allegations of negligence alone. "[P]rocedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). A claim of negligence is insufficient to support a § 1983 claim. *Daniels*, 474 U.S. at 333-36. Instead, to state a procedural due process claim, a plaintiff must allege a constitutionally arbitrary deprivation. *Id.*; *Howard*, 82 F.3d at 1350 ("'[A]rbitrary in the constitutional sense' for procedural due process purposes means conduct undertaken with something more than negligence.").

To the extent that Plaintiff's complaint presents allegations under Michigan tort law, § 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The Sixth Circuit has stated that district courts generally should decline to exercise supplemental jurisdiction over state law claims when all federal claims have been dismissed before trial. *See Landefeld v. Marion General Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at

*1-2 (6th Cir. June 18, 1998). In light of the Court's disposition of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction. The state-law claims will be dismissed without prejudice.

### III. Motion to dismiss

During the pendency of this Court's review under 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c), Plaintiff filed a motion to voluntarily dismiss the claims against Defendant Rubitschun (docket #5) because he had failed to exhaust his available administrative remedies against Defendant Rubitschun, as required by 42 U.S.C. § 1997e(a). Plaintiff's motion will be denied.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). Nevertheless, the Court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir. 1998). As the Court previously has discussed, Plaintiff's complaint fails to state a claim upon which relief can be granted against Defendant Rubitschun. His motion to dismiss the

action without prejudice for lack of exhaustion therefore will be denied, as further exhaustion would be futile.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Date:   June 2, 2005                    /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        CHIEF UNITED STATES DISTRICT JUDGE